**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 17 B 07037 |
| | ) | |
| LEWIS J. BORSELLINO, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| _____ | ) | |
| | ) | |
| NICK BOSCARINO, | ) | Adversary Case No. 17 A 00319 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEWIS J. BORSELLINO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

This matter is before the Court for ruling on the motion for summary judgment filed by plaintiff Nick Boscarino on his amended adversary complaint, seeking: (1) a determination that the judgment debt owed to him by debtor-defendant Lewis J. Borsellino is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), and (2) denial of Borsellino's discharge pursuant to 11 U.S.C. § 727(a)(2)(A).[1]  For the reasons set forth below, the Court holds that Boscarino is entitled to judgment as a matter of law on his § 523(a)(6) claim but that disputed issues of material fact preclude the entry of summary judgment on his § 727(a)(2)(A) claim.  As such, Boscarino's motion will be granted in part and denied in part.

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure, respectively.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (J).

## SUMMARY JUDGMENT AND LOCAL RULE 7056

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7056); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Summary judgment is therefore proper when there is only one logical conclusion to be reached by the finder of fact. *Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir. 1996). In deciding a motion for summary judgment, the court must "construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (internal quotation omitted).

In connection with the motion for summary judgment here, the Court permitted Borsellino to file a late response to Boscarino's statement of uncontested facts, as well as a statement of additional facts. Boscarino objected to Borsellino's filing of these documents, and the Court ordered further briefing from the parties as to whether it has authority to allow such filings. Having considered the parties' arguments on the issue, the Court permits Borsellino's response and statement of additional facts.

Local Rule 7056-1 requires a party moving for summary judgment to file a statement of material facts which he believes are uncontested and which entitle him to judgment as a matter of

law.  L.R. 7056-1.  The party opposing the motion is thereafter required to respond to each paragraph in the moving party's statement, making specific references to the record in cases of disagreement, and to set forth any additional material facts that would require denial of summary judgment, also with references to the record.  L.R. 7056-2.  If the opposing party fails to file a responsive statement, the facts in the moving party's statement will be deemed admitted.  L.R. 7056-2(B).

A court can require strict compliance with Local Rule 7056, but it is also within the court's discretion to allow a late filing.  *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–10 (7th Cir. 2005) (addressing compliance with Local Rule 56.1, the analogous district court rule). Because Boscarino is seeking summary judgment, it is paramount that each party is given the opportunity to present his version of the facts.  Accordingly, the Court allows Borsellino's late-filed documents and has considered them in making its decision on Boscarino's motion for summary judgment.

## BACKGROUND

The material facts in this matter are gleaned from the docket, the pleadings, and the summary judgment statement and response, as well as the exhibits attached thereto.[2]  Those facts are as follows.

---

[2] Unless otherwise noted, all references to the docket ("Docket No.") that follow are to Adversary No. 17 A 00319.

### A. Citation to Discover Assets and Initial State Court Proceedings

On January 30, 2014, judgment creditor Boscarino served a citation to discover assets on Borsellino in the Circuit Court of DuPage County (the "state court").[3] (Docket No. 32 at 2–3 & Ex. 6.) The citation provided, in relevant part, that Borsellino was

> prohibited from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom . . . belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her . . . until the further order of the court or the termination of the proceeding, whichever occurs first.[4]

(*Id.* at 3 & Ex. 6.) A rider attached to the citation clarified that Borsellino was to produce, among other things, "[d]ocuments sufficient to identify all personal property in which [he owned] any legal or equitable interest, including, but not limited to, motor vehicles, boats, aircraft, appliances, tools, jewelry, currency, etc." (*Id.*)

In accordance with the citation to discover assets and pursuant to 735 ILCS 5/2-1402(c)(5),[5] Boscarino sought turnover of Borsellino's interest in a 28-foot Streblow boat[6] on

---

[3] Though not stated in the parties' briefs, a state court evidentiary hearing transcript indicates that the judgment was based on a loan that Boscarino had extended to Borsellino. (Docket No. 32, Ex. 12 at 15:24–16:6.) According to the judgment order itself, the judgment totals $390,128.26, which includes interest of 8.5% pursuant to a September 30, 1999 promissory note. (*Id.*, Ex. 7.)

[4] This language is expressly permitted by 735 ILCS 5/2-1402(f)(1).

[5] Subsection (c)(5) of the statute provides, in pertinent part, as follows:

> When assets or income of the judgment debtor not exempt from the satisfaction of a judgment . . . are discovered, the court may, by appropriate order or judgment . . . [c]ompel any person cited to execute an assignment of any chose in action or a conveyance of title to real or personal property . . . in the same manner and to the same extent as a court could do in any proceeding by a judgment creditor to enforce payment of a judgment or in aid of the enforcement of a judgment.

735 ILCS 5/2-1402(c)(5).

[6] According to its website, Streblow Custom Boats is located in Lake Geneva, Wisconsin, and designs "handmade custom wood boats." STREBLOW CUSTOM BOATS, https://www.streblowcustomboats.com (last visited August 27, 2020).

April 21, 2015.[7] (*Id.*, Ex. 7.) On June 4, 2015, Borsellino filed a response to the turnover motion, arguing that he did "not have any right [to], title [to] or interest in a 28 Ft. Streblow [boat,] although at one point in the past he did." (*Id.*, Ex. 16 at 1.) According to Borsellino, the boat had been conveyed to Lombard Ventures, LLC ("Lombard") in 2012 to partially satisfy a promissory note executed in 2011. (*Id.* at 1–2.) Lombard is a series LLC that was established on Borsellino's behalf for purposes of estate planning. (*Id.*, Ex. 12 at 8:11–9:6; 37:9–6.) The promissory note was executed by Borsellino and Lombard in exchange for a $250,000 loan, with the boat pledged as collateral. (*Id.*, Ex. 16 at 1.)

Before the state court could reach a decision on the motion for turnover—and within one month of the filing of that motion—the boat was conveyed to an individual by the name of Frank Catalano in exchange for three payments. (*Id.* at 3 & Ex. 8.) All three were made by checks payable to Lewis J. Borsellino, his wife Julie Borsellino, and "Lombard Ventures, LLC, Manager Lewis J. Borsellino." (*Id.*) The first—in the amount of $20,000—was dated April 16, 2015. (*Id.*) The second and third, both dated May 2, 2015, were for $150,000 and $23,640, respectively. (*Id.*)

In addition to these checks, the parties produced several documents related to the transfer of the boat. These documents include, *inter alia*: (1) the contract for the sale of the boat, dated April 15, 2015, which identifies the sellers as "Lewis J. Borsellino and Julie Borsellino and Lombard Ventures LLC, Manager Lewis J. Borsellino"; (2) a bill of sale, dated May 2, 2015, which indicates the same sellers; (3) a State of Wisconsin Boat Certificate of Title, which names Borsellino as the boat's owner; and (4) a document entitled "Boat Information," which reflects a

---

[7] Boscarino states—and Borsellino does not dispute—that the turnover motion was filed on April 15, 2015. (Docket No. 32 at 3.) The transcript of the state court's ruling of January 5, 2017, however, indicates that the motion was filed on April 21, 2015 (*id.*, Ex. 1 at 6:1–2), and the certificate of service filed with the motion itself shows that the motion was served on April 25, 2015 (*id.*, Ex. 7 at 2).

5

transfer of the boat from Borsellino, as "owner," to Catalano. (*Id.*, Ex. 9 at 20–26.) Although Borsellino claimed that the boat was initially placed in trust, no documents were produced in support of that argument. (*Id.*, Ex. 1 at 7:10–18 ("There's no evidence that the boat was in a trust, and I think Mr. Borsellino was using the word trust interchangeably with some of these [LLCs], because the evidence showed that there were multiple [LLCs] that were created.".)

On July 8, 2015, after numerous document requests and despite the fact that it was not mentioned in his response to the turnover motion, Borsellino produced, for the first time, a "Nominee Agreement." (*Id.* at 5; *see also* Docket No. 17, Ex. 8.) Purportedly executed on or as of April 1, 2011, the agreement supports Borsellino's contentions that he retained only a legal interest in the boat and that the beneficial interest had been transferred to Lombard. (Docket No. 51 at 1 & Ex. 1.) Gary Stern, the attorney whose law firm ostensibly drafted the Nominee Agreement, failed to produce it later when he made his own production related to the matter. (*See* Docket No. 32 at 5; Ex. 12 at 72:23–73:12; *see* Ex. 17 at 1–5.) At the time the agreement was allegedly executed, Lombard was known as Carmelo, LLC, not having undergone a name change until February 2012. (*Id.* at 5 & Ex. 12 at 60:13–61:3.)

On January 5, 2017, after a review of these documents, the state court ruled on the motion for turnover, as well as a motion for civil contempt that had been filed in the interim. (*Id.*, Exs. 1 & 2.) The state court ultimately granted both motions, explaining as follows: "The Court is not going to accept the nominee agreement as a document to shield ownership of the boat at issue. This Court finds that Mr. Borsellino owned the boat at the time of the citation, and it was sold in violation of the citation." (*Id.*, Ex. 1 at 12:5–13:13 & Ex. 2.) As part of its ruling, the state court explicitly referred to the various documents listed above and noted several circumstances that it

6

found suspect with respect to the Nominee Agreement.[8] (*Id.*, Ex. 1 at 6:13–10:2.) Accordingly, the state court found Borsellino to be in indirect civil contempt[9] and ordered him to pay the proceeds of the sale of the boat to Boscarino by January 26, 2017 in order to purge himself of the contempt. (*Id.*, Ex. 1 at 12:10–13:13 & Ex. 2.)

## B. Borsellino's Bankruptcy Filing and Subsequent State Court Proceedings

Rather than purging himself of the contempt, on January 27, 2017, Borsellino filed a motion for reconsideration of the state court's ruling. (Bankr. No. 17-07037, Docket No. 47, Ex. 16; *see also id.*, Ex. 17 at 1.) Attached to the motion were new documents, including, *inter alia*: (1) a second, updated sales contract, apparently executed June 4, 2015, which lists the seller of the boat as "Lombard Ventures, LLC – Series B, a Series of a Delaware series limited liability company"; (2) a July 7, 2017 email exchange between Borsellino and Catalano, explaining that Catalano's assistant had signed the second sales contract on his behalf; (3) a Lombard tax return, signed July 5, 2017—after the state court's initial ruling—showing the proceeds from the sale of the boat as income; (4) an affidavit of Kathleen M. Griffin, one of the attorneys who worked with Borsellino and Stern to facilitate the estate planning transfers, stating that, to the best of her

---

[8] "As I indicated, there[] [are] problems with this nominee agreement. First, the testimony shows that the Lombard Ventures, LLC[] did not even exist at the time of April 2011, or at a minimum, it was under a different name. More telling to this Court[] [is] that this document was not even produced. It wasn't produced at the March 2015 citation deposition of Mr. Borsellino, it was not produced in response to the 2014 citation, it was not mentioned in the June 4th, 2014 opposition pleading to the motion for turnover. Mr. Stern, who was Mr. Borsellino's attorney, [in] his testimony[] he stated [that] he may or he may not have prepared the nominee agreement. He did not produce it in his third-party citation that was directed against him." (Docket No. 32, Ex. 1 at 9:5–20.)

[9] The contempt ruling was entered pursuant to Illinois Supreme Court Rule 277(h), which provides, in relevant part, as follows:

> Any person who fails to obey a citation . . . issued pursuant to any provision of this rule may be punished for contempt. Any person who refuses to obey any order to deliver up or convey or assign any personal property or in an appropriate case its proceeds or value . . . may be committed until he has complied with the order or is discharged by due course of law.

Ill. Sup. Ct. R. 277(h).

7

knowledge, Borsellino and his wife transferred all of their known assets, including the boat, to Lombard in 2011 and 2012;[10] and (5) a yacht insurance policy, listing the insured as "Lewis Borsellino c/o Lombard Ventures Series B." (Docket No. 51, Ex. 2–4, 7 & 9; *see also* Docket No. 63 at 7.)

On March 7, 2017, before the state court could rule on the motion for reconsideration, Borsellino filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. (Bankr. No. 17-07037, Docket No. 1.) About six months later, on September 18, 2017, this Court entered an order modifying the automatic stay to permit the state court action to proceed and for "the parties and Illinois courts [to] litigate and adjudicate any appeals from the state court's decision." (*Id.*, Docket No. 63.) In accordance with that order, the state court held a hearing on December 20, 2017 and ultimately denied Borsellino's motion for reconsideration. (Docket No. 32, Ex. 3.) Thereafter, Borsellino filed a notice of appeal to the Appellate Court of Illinois, Second Judicial District, on January 19, 2018. (*Id.*, Ex. 4.) The appeal was later dismissed on August 27, 2018 for Borsellino's failure to comply with an appellate court order. (*Id.*, Ex. 5.)

### C. Borsellino's Motions to Dismiss and Boscarino's Motion for Summary Judgment

Boscarino filed his initial adversary complaint on June 5, 2017, shortly before the Court modified the automatic stay to allow the parties to proceed in state court. (Docket No. 1.) After the state court entered its ruling on the motion for reconsideration, Borsellino filed a motion to dismiss the adversary proceeding on March 23, 2018. (Docket No. 10.) This Court held a hearing on that motion and thereafter entered an order dismissing Counts I, III, and IV of the complaint

---

[10] Griffin states in her affidavit that Borsellino hired Stern to create an estate plan under which "approximately sixty (60) million dollars of assets were transferred to Lombard Ventures Series LLC and Magnolia Trusts." (Docket No. 51, Ex. 7.) The record includes the trust agreement establishing the Magnolia Trust. (Docket No. 17, Ex. 8.) No further discussion of that trust is necessary, however, as Borsellino argues that Lombard owned the beneficial interest in the boat and the state court explicitly found that the boat was never placed in trust.

8

without prejudice, dismissing Count II with prejudice, and denying the motion to dismiss as to Count V. (Docket No. 16.) The order also granted Boscarino leave to file an amended complaint, which he did on June 22, 2018. (Docket No. 17.) Borsellino then filed a second motion to dismiss (Docket No. 19), and, after further briefing, the Court denied that motion as to Counts I, IV, and V and granted the motion as to Count III (Docket No. 24).[11]

With these motions resolved, Boscarino moved for summary judgment on May 24, 2019. (Docket No. 32.) In his motion, Boscarino argues that principles of issue and claim preclusion entitle him to summary judgment on his § 523(a)(6) and § 727(a)(2)(A) claims. (*Id.* at 10–13.) Specifically, Boscarino argues that the state court's ruling satisfies the elements of those statutory provisions because it establishes that "Borsellino intentionally, willfully and maliciously violated the citation by backdating document(s), selling the boat and absconding with the proceeds during the pendency of the citation." (*Id.* at 11–13.)

In response, Borsellino argues that the issues before the state court were "categorically different" from those before this Court and that Boscarino is attempting to distort the state court's ruling in order to satisfy the elements of his claims. (Docket No. 51 at 2.) According to Borsellino, the state court did not find that the Nominee Agreement was fraudulently created, nor that Borsellino perjured himself or backdated documents. (*Id.*) Instead, Borsellino argues, there are factual issues that need to be resolved in order to determine whether the beneficial interest in the boat was transferred to Lombard. (*Id.*)

---

[11] In Counts I , II, and III of both the initial and amended complaints, Boscarino objects to the dischargeability of debt owed to him by Borsellino pursuant to §§ 523(a)(6), 362(b)(4), and 523(a)(7), respectively. (Docket Nos. 1 & 17.) In Counts IV and V of both complaints, Boscarino objects to Borsellino's discharge under §§ 727(a)(2)(A) and (a)(4), respectively. (*Id.*) In the amended complaint, Boscarino acknowledges that Count II was dismissed but states that he re-pled it "to avoid a potential waiver if there is ever an appeal[.]" (*Id., * Docket No. 17 at 11.)

9

After the motion for summary judgment was fully briefed, the Court took the matter under advisement. Having reviewed all of the relevant documents, the arguments of the parties, and the applicable case law, the Court is now ready to rule.

## DISCUSSION

Boscarino seeks summary judgment on two counts of his amended adversary complaint: Count I for willful and malicious injury under § 523(a)(6) and Count IV for concealment of property, with the intent to hinder, delay, or defraud a creditor, within one year of the bankruptcy filing under § 727(a)(2)(A). For the reasons that follow, the Court finds that summary judgment is appropriate as to the § 523(a)(6) count but inappropriate as to the § 727(a)(2)(A) count. Accordingly, Boscarino's motion will be granted as to Count I but denied as to Count IV.

### A. Count I: Nondischargeability Under § 523(a)(6)

Section 727(a) is the general discharge provision of the Bankruptcy Code. 11 U.S.C. § 727. According to § 727(b), "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." 11 U.S.C. § 727(b). Explicitly excepted from the § 727(a) discharge, however, are those debts listed in § 523. The provision at issue here, § 523(a)(6), excepts from discharge any debt incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In order for a debt to be excepted from discharge under § 523(a)(6), three elements must be established: (1) the defendant caused an injury to the plaintiff or a property interest of the plaintiff; (2) the defendant's actions were willful; and (3) the defendant's actions were malicious. *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). A party seeking a nondischargeability determination under § 523(a)(6) bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

10

Boscarino attempts to meet his burden of proof in this matter primarily by utilizing principles of claim and issue preclusion. These doctrines have historically been referred to as res judicata and collateral estoppel, respectively, but the Court addresses them "in terms of claim preclusion and issue preclusion . . . to avoid imprecision." *In re Kmart Corp.*, 362 B.R. 361, 378 (Bankr. N.D. Ill. 2007), *aff'd sub nom. Philip Morris Capital Corp. v. Kmart Corp.*, 2007 WL 3171316 (N.D. Ill. Oct. 24, 2007); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (explaining that the labels "res judicata" and "collateral estoppel" can be confusing because res judicata is commonly used as an overarching label for both claim and issue preclusion).

"Claim preclusion is based on the principle that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Kmart Corp.*, 362 B.R. at 378 (quoting *In re Kroner*, 953 F.2d 317, 320 (7th Cir. 1992)). The doctrine "bars a subsequent claim if it is based on the same, or nearly the same factual allegations." *Id.* (internal quotation omitted). Claim preclusion does not apply, however, in either § 523 dischargeability or § 727 discharge actions, as the determination of these actions falls within the exclusive purview of the bankruptcy court. *Meyer v. Rigdon*, 36 F.3d 1375, 1378–79 & n.1 (7th Cir. 1994) (noting that the "Supreme Court has held that [claim preclusion] does not apply in bankruptcy discharge exception proceedings" (citing *Brown v. Felsen*, 442 U.S. 127, 138–39 (1979))); *RES-GA Diamond Meadows, LLC v. Robertson (In re Robertson)*, 576 B.R. 684, 701 (Bankr. N.D. Ga. 2017) (collecting cases and explaining that "[i]t has been uniformly held that [claim preclusion] cannot be used to bind a bankruptcy court to the finding of another court regarding a debtor's discharge or the dischargeability of certain debt").

11

Issue preclusion, on the other hand, applies in proceedings under both § 523(a) and § 727. *Grogan*, 498 U.S. at 284 n.11; *Robertson*, 576 B.R. at 701. A narrower doctrine, "issue preclusion precludes the relitigation of *issues* already determined in a prior action." *WDH LLC v. Sobczak-Slomczewski (In re Sobczak-Slomczewski)*, Bankr. No. 13 B 16661, Adv. No. 13 A 00972, 2014 WL 3844808, at *11–12 (Bankr. N.D. Ill. Aug. 5, 2014) (emphasis added) (citing *Hayes v. City of Chi.*, 670 F.3d 810, 814 (7th Cir. 2012)).

"Whether the relevant [preclusion] principles are state or federal . . . depends on whether the judgment claimed as preclusive is state or federal. Federal courts are obligated to give state 'judicial proceedings' the 'same full faith and credit' those proceedings would have in the courts of that state.'" *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 299 B.R. 211, 227 (Bankr. N.D. Ill. 2003), *aff'd,* 2004 WL 2075442 (N.D. Ill. Aug. 31, 2004); *see also* 28 U.S.C. § 1738. Because the judgment against Borsellino was issued by an Illinois court, "the law of Illinois determines the extent to which the state court decision should be given preclusive effect." *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014).

Under Illinois law, issue preclusion requires that: (1) a prior case presented the same issues; (2) the case ended in a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party in the prior case. *Id.* "In addition, 'the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation.'" *Id.* "Actually litigated" does not mean thoroughly litigated, but only "that the parties disputed the issue and the trier of fact resolved it." *Harmon v. Gordon*, 712 F.3d 1044, 1055 n.4 (7th Cir. 2013).

Only the first element is in dispute in this matter. Boscarino argues that the issues in the state court case were the same as the ones in this proceeding for purposes of issue preclusion

12

because the findings in the state court's ruling satisfy the elements required for nondischargeability under § 523(a)(6). Borsellino disagrees. He contends that factual findings of willfulness and malice are not required by the rule under which the state court found him to be in civil contempt and that the state court ruling did not contain any such findings. Thus, Borsellino claims, issue preclusion is inappropriate here. As discussed below in the context of § 523(a)(6), the Court finds that the issues sought to be precluded in this matter are the same as those that came before the state court for purposes of issue preclusion.

### 1. Borsellino caused injury to Boscarino's property interest.

Turning to the first element under § 523(a)(6), "injury" means a "violation of another's legal right, for which the law provides a remedy." *Horsfall*, 738 F.3d at 774 (internal quotation omitted). Such a violation occurred when Borsellino transferred the boat at issue to Catalano while subject to the citation to discover assets. Once the citation was issued, Boscarino's judgment against Borsellino became a lien on the boat. *See* 735 ILCS 5/2-1402(m) (providing that "[t]he judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this [s]ection"). As a result, Boscarino had a legal interest in the boat as of January 30, 2014—the day the citation to discover assets was served on Borsellino—and Borsellino caused injury to Boscarino's property interest when he sold the boat on April 15, 2015.

Although Borsellino argues that a factual issue remains with respect to whether the beneficial interest in the boat had been transferred to Lombard in 2011 or 2012, that issue was addressed and decided by the state court judge who found that "Borsellino owned the boat at the time of the citation, and it was sold in violation of the citation." (Docket No. 32, Ex. 1 & 2). The issue was fully litigated in the state court and was necessary to the state court's judgment. Boscarino has therefore met the burden of proof on the first element of his § 523(a)(6) claim.

13

### 2. Borsellino's conduct was willful.

For purposes of § 523(a)(6), "willful" conduct requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Although the U.S. Supreme Court in *Geiger* did not define the intent needed for conduct to be "willful" under § 523(a)(6), subsequent decisions have found that it encompasses either "a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts." *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 704 (Bankr. N.D. Ill. 2002); *see also Horsfall*, 738 F.3d at 774 ("'Willfulness' can be found either if the 'debtor's motive was to inflict the injury, or [if] the debtor's act was substantially certain to result in injury.'"). "Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury." *ColeMichael Invs., L.L.C. v. Burke (In re Burke)*, 398 B.R. 608, 626 (Bankr. N.D. Ill. 2008). In cases involving injury to property interests, "[t]he true injury is that the creditor's collateral was wrongly or improperly disposed of and that the proceeds were used for purposes other than payment of the obligation that [the] property secured." *Chi. Reg'l Council of Carpenters Pension Fund v. Van Der Laan (In re Van Der Laan)*, 556 B.R. 366, 381 (Bankr. N.D. Ill. 2016) (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)). Therefore, "the question to ask is whether the debtor intended to improperly use the creditor's collateral and/or its proceeds for purposes other than the payment of the debt that [the] property secured. If so, there is an intentional injury." *Id.*

Here, both the state court's ruling and the surrounding circumstances support a finding that Borsellino either intended to cause injury to Boscarino's property interest or was substantially certain that injury would result from his actions. Borsellino was served with the citation to

14

discover assets on January 30, 2014. That citation explicitly prohibited the transfer of any non-exempt personal property, including the boat. Boscarino's motion for turnover of the boat was filed on either April 15, 2015, the date of the original sales contract, or April 21, 2015, about two weeks before Catalano had finished paying for the boat under the contract.[12] The proceeds of the sale were purportedly deposited into a Lombard bank account. (Docket 63, Borsellino's Resp. to Boscarino's Statement of Facts ("SOF") at 8.) Some of those proceeds were used to pay Borsellino's living expenses; others were allegedly used to pay Lombard's expenses. (Docket No. 32, Boscarino's SOF at 6 & Ex. 1 at 11:18–24.) These facts—all of which were specifically found by the state court—establish that Borsellino intended to improperly use the sales proceeds of Boscarino's collateral for purposes other than the payment of the judgment debt.

Rather than attempt to controvert any of the facts above, Borsellino again relies on the Nominee Agreement, even though the state court expressly refused to allow that document "to shield ownership of the boat." (*Id.*, Ex. 1 at 12.) Indeed, each of the documents that Borsellino relies on to dispute the facts in Boscarino's motion for summary judgment—all of which pertain to the validity of the Nominee Agreement—were reviewed and rejected by the state court. (*Id.*, Ex. 1 at 6:24–12:9; *see also* Docket 59 at 7–8.) By modifying the automatic stay, this Court gave Borsellino an opportunity to pursue both his motion for reconsideration in the state court, as well as an appeal of the state court's decision. Having exhausted those options, Borsellino now returns to the bankruptcy court for a third bite at the apple. The Court cannot and will not permit Borsellino to relitigate matters already determined by the state court. The Nominee Agreement cannot now be used to support the argument that Borsellino did not willfully cause injury to Boscarino's

---

[12] *See* discussion *supra* note 7.

15

property interest when he sold the boat in violation of the citation lien and failed to tender the proceeds from that sale.

Borsellino argues that Supreme Court Rule 277, under which the state court found him to be in indirect civil contempt, does not require willful conduct and that the state court failed to make any factual findings of willfulness in its ruling. Thus, Borsellino contends, issue preclusion is inappropriate in this matter. The Court rejects this argument. True, neither the Supreme Court Rule nor the state court ruling includes words or phrases requiring willfulness or the intent to cause injury. However, "the failure of the statutory text of § 523(a)(6) to appear in the state court proceedings does not bar the application of issue preclusion." *Gerard v. Gerard*, 780 F.3d 806, 810 (7th Cir. 2015). Instead, the Court must "assess whether the [state court's] findings satisfy the 'willful and malicious' standard within the meaning of § 523(a)(6)." *Id.* The Court has found that they do.

Borsellino has not offered any facts to demonstrate that his actions were anything other than willful, as that term is used in § 523(a)(6). In the absence of any factual counterarguments unrelated to the validity of the Nominee Agreement, the record shows that Borsellino either intentionally violated the citation lien or knew that injury was substantially certain to result to Boscarino's property interest from his acts. Accordingly, Boscarino has established the second element of his § 523(a)(6) claim.

### 3. Borsellino's conduct was malicious.

Finally, conduct is "malicious" under § 523(a)(6) if it is undertaken "in conscious disregard of one's duties or without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). To establish malice for purposes of § 523(a)(6), a plaintiff must demonstrate that the defendant (1) intentionally committed a wrongful act, (2) which caused injury to the plaintiff, and (3) which was

16

done without just cause or excuse. *Zamora v. Jacobs (In re Jacobs)*, 403 B.R. 565, 581 (Bankr. N.D. Ill. 2009).

In this matter, the record shows that Borsellino's actions were malicious because he intentionally transferred the boat to Catalano in violation of the citation lien, such transfer caused injury to Boscarino's property interest, and the transfer was made without just cause or excuse. As to the latter, Borsellino has never argued, in either the state court or this one, that he was unaware of the citation to discover assets or his duties thereunder. As such, the Court finds that Borsellino acted with malice, and, thus, the third element under § 523(a)(6) has been satisfied.

In sum, the undisputed facts demonstrate that Borsellino's conduct willfully and maliciously injured Boscarino. The state court record and the surrounding circumstances provide no basis to decide otherwise. Accordingly, the Court concludes that all of the elements under § 523(a)(6) have been established and that Boscarino's judgment debt is not dischargeable pursuant to that statutory exception to discharge. Therefore, summary judgment will be entered in Boscarino's favor on Count I.

### B. Count IV: Denial of Discharge Under § 727(a)(2)(A)

In addition to the exceptions to discharge listed in § 523, a debtor's discharge may be denied *in toto* under any of the subsections in § 727(a). The provision at issue here, § 727(a)(2)(A), denies a debtor in bankruptcy a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor . . . , has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition[.]" 11 U.S.C. § 727(a)(2)(A); *see In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom. Kontrick v. Ryan*, 540 U.S. 443 (2004). Concealment, for purposes of § 727(a)(2)(A), consists of "'failing or refusing to

17

divulge information to which creditors [are] entitled.'" *Neary v. Mosher (In re Mosher)*, 417 B.R. 772, 784 (Bankr. N.D. Ill. 2009).

Section 727(a)(2)(A) "consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor). The party seeking to bar discharge must prove that *both* [of] these components were present during the one year before bankruptcy; anything occurring before that one-year period is forgiven." *Kontrick*, 295 F.3d at 736 (internal quotation and internal citation omitted).

Relying again on issue preclusion, Boscarino contends that he is entitled to judgment as a matter of law under § 727(a)(2)(A) because the state court's findings satisfy the elements required for denial of Borsellino's discharge under that statutory provision. As to the "act" element, Boscarino does not allege that a transfer occurred within the one-year period prior to Borsellino's bankruptcy filing. Rather, he claims that Borsellino concealed the property at issue within that period by backdating the Nominee Agreement and purportedly offering perjurious testimony in the state court proceedings. Borsellino does not agree. He contends that Boscarino's § 727(a)(2)(A) claim is based on "new allegations" that Borsellino falsified documents and committed perjury—allegations that he denies. (Docket No. 51 at 13.) According to Borsellino, neither of these allegations was addressed by the state court, and, thus, issue preclusion is not applicable here.

Borsellino is right. Boscarino relies solely on the state court record in support of his objection to Borsellino's discharge, and on that record alone he cannot establish the elements required under § 727(a)(2)(A). The state court did not find that the Nominee Agreement was fraudulent, nor that Borsellino committed perjury in his testimony. Thus, Boscarino has not

18

demonstrated that any concealment occurred for purposes of § 727(a)(2)(A).[13] Because he has failed to prove the first required element, the Court need not address the second, whether Borsellino's intent was "improper."

Based on the analysis above, the Court holds that the issues in the state court case were not the same as those in this matter in order for issue preclusion to apply under § 727(a)(2)(A). As such, there remain disputed issues of material fact, precluding the entry of summary judgment on Count IV.

## CONCLUSION

For the foregoing reasons, the Court will grant Boscarino's motion for summary judgment as to Count I and deny his motion as to Count IV. A separate order will be entered consistent with this Memorandum Opinion.

Dated: **September 24, 2020**　　　　　　　　ENTERED:

　　　　　　　　　　　　　　　　　　　　　　　　　Janet S. Baer
　　　　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge

---

[13] The cases that Boscarino cites in support of his issue preclusion argument are inapposite, as the issue to be estopped in each of those cases was actually and necessarily litigated in the prior proceeding.